# **Exhibit A**

**EMPLOYEE COVENANTS AGREEMENT**
*(Revised August 2015)*

I, Kenneth Carson, am about to become a paid employee of Flatiron Health, Inc., a Delaware corporation (the "Company"), with its principal place of business located at 96 Spring Street, 7th and 8th Floors, New York NY 10012. I am making this Agreement in consideration of my employment by the Company, and the compensation and benefits afforded to me in connection with my employment.

1. **Representations and Warranties**

    1. **No Conflict with any Other Agreement or Obligation.** I represent and warrant that I am not bound by any agreement or arrangement with or duty to any other person that would conflict with this agreement. Except for any obligation described on Exhibit A attached to this agreement, I do not have any non-disclosure, confidentiality, non-competition or other similar obligations to any other person concerning proprietary, secret or confidential information that I learned of during any previous engagement, employment or association nor have I had any obligation to assign contributions or inventions of any kind to any other person. I shall not disclose to the Company or induce the Company to use any proprietary, trade secret or confidential information or material belonging to others.

    2. **No Infringement of Third Party Intellectual Property Rights.** I represent and warrant that the Inventions (as defined in Section 3 below) will not infringe any patent, copyright, trade secret or other proprietary right of any third party.

    3. **No Open Source.** I represent and warrant that the Inventions will not include any open source software, except with the prior written consent of the Company.

2. **Confidential Information**

    1. **Definition of Confidential Information.** "Confidential Information" means all of the trade secrets, know-how, ideas, business plans, pricing information, the identity of and any information concerning customers or suppliers, computer programs (whether in source code or object code), procedures, processes, strategies, methods, systems, designs, discoveries, inventions, production methods and sources, marketing and sales information, information received from others that the Company is obligated to treat as confidential or proprietary, and any other technical, operating, financial and other business information that has commercial

value, relating to the Company, its business, potential business, operations or finances, or the business of the Company's affiliates or customers, of which I may have acquired or developed knowledge or of which I may in the future acquire or develop knowledge of during my work for the Company, or from my colleagues while working for the Company.

2. **Protection of Confidential Information**. I will use the Confidential Information only in the performance of my duties for the Company. I will not disclose the Confidential Information, directly or indirectly, at any time during or after my employment by the Company except to persons authorized by the Company to receive this information. I will not use the Confidential Information, directly or indirectly, at any time during or after my employment by the Company, for my personal benefit, for the benefit of any other person or entity, or in any manner adverse to the interests of the Company. I will take all action reasonably necessary to protect the Confidential Information from being disclosed to anyone other than persons authorized by the Company.

3. **Return of Confidential Information**. When my employment by the Company terminates, I will immediately return or destroy all materials (including without limitation, written or printed documents, email and computer disks or tapes, whether machine or user readable, computer memory, and other information reduced to any recorded format or medium) containing, summarizing, abstracting or in any way relating to the Confidential Information. At the time I return these materials I will acknowledge to the Company, in writing and under oath, in the form attached as Exhibit 2.3, that I have complied with the terms of this agreement. I understand and agree that any social media accounts I open, handle or become involved with on the Company's behalf constitute Company property. I will provide all access codes, passcodes, and administrator rights to the Company at any time during or after my employment on demand.

3. **Inventions**

   1. **Definition of Inventions**. The term "Inventions" means:

      a. contributions and inventions, discoveries, creations, developments, improvements, works of authorship and ideas (whether or not they are patentable or copyrightable) of any kind that are or were, since the date of commencement of my employment with the Company, conceived, created, developed or reduced to practice by me, alone or with others, while employed by the Company that are either: (i) conceived during regular

working hours or at my place of work, whether located at Company, affiliate or customer facilities, or at my own facilities; or (ii) regardless of whether they are conceived or made during regular working hours or at my place of work, are directly or indirectly related to the Company's business or potential business, result from tasks assigned to me by the Company, or are conceived or made with the use of the Company's resources, facilities or materials; and

b. any and all patents, patent applications, copyrights, trade secrets, trademarks, domain names and other intellectual property rights, worldwide, with respect to any of the foregoing.

c. The term "Inventions" specifically excludes any inventions I developed entirely on my own time without using any Company equipment, supplies, facilities or trade secret information, unless (i) the invention related at the time of conception or reduction to practice of the invention to (A) the Company's business, or (B) the Company's actual or demonstrably anticipated research or development, or (ii) the invention results from any work performed by me for the Company.

2. All Inventions are Exclusively the Property of the Company. (a) I will promptly disclose all Inventions, in full detail, to persons authorized by the Company. I will not disclose any Invention to anyone other than persons authorized by the Company, without the Company's express prior written instruction to do so.

    a. All Inventions will be deemed "work made for hire" as that term is used in the U.S. Copyright Act, and belong solely to the Company from conception. I hereby expressly disclaim all interest in all Inventions. To the extent that title to any Invention or any materials comprising or including any Invention is found not be a "work made for hire" as a matter of law, I hereby irrevocably assign to the Company all of my right, title and interest to that Invention. At any time during or after my employment by the Company that the Company requests, I will sign whatever written documents of assignment are necessary to formally evidence my irrevocable assignment to the Company of any Invention.

    b. At all times during or after my employment by the Company I will assist the Company in obtaining, maintaining and renewing patent, copyright, trademark and other appropriate protection for

any Invention, in the United States and in any other country, at the Company's expense.

3. **Excluded Information**.

   a. On Exhibit B attached to this agreement I have included a complete list, with nonconfidential descriptions, of any inventions, ideas, reports and other creative works that I made or conceived prior to my employment by the Company (collectively, the **"Excluded Information"**). I intend that the items on that list and only the items on that list shall be excluded from the restrictions set forth in this agreement. I will not assert any right, title or interest in or to any Invention or claim that I made, conceived or acquired any Invention before my employment by the Company unless I have specifically identified that Invention on the attached Exhibit B. In the event that any Excluded Information is incorporated into any Invention, I hereby grant Company a perpetual, worldwide, royalty free, non-exclusive license to use and reproduce the Excluded Information for commercial, internal business and all other purposes.

   b. It is understood and agreed by Company and me that the provisions of this Agreement requiring assignment of Inventions to the Company may not apply to any Invention that qualified fully under Section 2870 of the California Labor Code, a copy of which is referenced on Exhibit B. I shall, however, comply with the provisions of this Agreement and disclose any Inventions that I believe meet the criteria of Section 2870 (indicating whether I believe that such Inventions are covered by Section 2870). The Company shall hold any disclosure made pursuant to this Section in confidence in accordance with the provisions of this Agreement. I have provided on Exhibit B a list describing all inventions, discoveries, original works of authorship, developments, improvements, and trade secrets, which were conceived in whole or in part by me prior to my employment with the Company to which I have any right, title or interest, which are subject to California Labor Code Section 2870 and which relate to the Company's proposed business, products, or research and development ("Prior Inventions"); or, if no such list is attached, I represent and warrant that there are no such Prior Inventions. The items on such list, and only those items, shall be excluded from the restrictions set forth in this Agreement. I represent and warrant that the inclusion of any Prior Inventions from Exhibit B will not materially affect my ability to perform all obligations under this Agreement. If, in the course of my

employment with the Company, I incorporate into or use in connection with any Invention any Prior Invention, I hereby grant to the Company a nonexclusive, royalty-free, fully paid-up, irrevocable, perpetual, worldwide license, with the right to grant and authorize sublicenses, to make, have made, modify, use, import, offer for sale, and sell such Prior Invention as part of or in connection with such Invention related thereto.

4. **Non-Solicitation; Non-Compete**. To protect the legitimate business interests of the Company and in consideration of the Company's willingness to provide to me access to its Confidential Information, customer relationships, and goodwill, I agree that during the period beginning on the initial date of my employment by the Company and ending one (1) year after termination of my employment by the Company for any reason (the **"Restricted Period"**), I will not directly or indirectly, whether as owner, sole proprietor, partner, shareholder, director, member, consultant, agent, founder, co-venture partner or otherwise, (i) do anything to divert or attempt to divert from the Company any business of any kind, including, without limitation, solicit or interfere with any of the Company's customers, clients, members, business partners or suppliers, (ii) solicit, induce, recruit or encourage any person engaged or employed by the Company to terminate his or her employment or engagement, or (iii) engage, invest or participate in (x) any business that is similar to those which the Company has created, has under development or are the subject of active planning from time to time during my employment by the Company, or (y) a Competing Business. For purposes of this Agreement, a **"Competing Business"** means the business of providing software products, data analysis, data, clinical trial research services, analytics and electronic medical record systems to hospitals, physicians, community practices, health care centers, and pharmaceutical companies in the oncology industry; provided, however, that I may own, as a passive investor, publicly-traded securities of any corporation that competes with the business of the Company so long as such securities do not, in the aggregate, constitute more than three percent (3%) of any class of outstanding securities of such corporations.

5. **Non-Disparagement**. I will not at any time during or after my employment with the Company disparage the products, services, and reputation of the Company, its clients or customers, and its or their respective affiliates or any of its or their respective officers, directors, employees or agents.

6. **Trade Secrets**. Employee acknowledges that he/she will not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret if (a) Employee makes such disclosure in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney and such disclosure is made solely for the purpose of reporting or investigating a suspected violation of law; or (b) Employee makes such disclosure in a complaint or other document filed in a lawsuit or other proceeding if such filing is made under seal.

7. **Miscellaneous**

    1. **Interpretation and Scope of this Agreement**. Each provision of this agreement shall be interpreted on its own. If any provision is held to be unenforceable as written, it shall be enforced to the fullest extent permitted under applicable law. In the event that one or more of the provisions contained in this agreement shall for any reason be held unenforceable in any respect under the law of any state of the United States or the United States, then it shall (a) be enforced to the fullest extent permitted under applicable law, and (b) such unenforceability shall not affect any other provision of this agreement, but this agreement shall then be construed as if such unenforceable portion(s) had never been contained herein.

    2. **Remedies**. I understand and agree that if I breach or threaten to breach any of the provisions of this agreement the Company would suffer immediate and irreparable harm and that monetary damages would be an inadequate remedy. I agree that, in the event of my breach or threatened breach of any of the provisions of this agreement, the Company shall have the right to seek relief from a court to restrain me (on a temporary, preliminary and permanent basis) from using or disclosing Company Confidential Information or Inventions or otherwise violating the provisions of this agreement, and that any such restraint shall be in addition to (and not instead of) any and all other remedies to which the Company shall be entitled, including money damages. The Company shall not be required to post a bond or other security to secure against an imprudently granted injunction (again, whether temporary, preliminary or permanent).

    3. **Governing Law; Jury Waiver; Consent to Jurisdiction**. This agreement (together with any and all modifications, extensions and amendments of it) and any and all matters arising directly or indirectly herefrom shall be governed by and construed and enforced in accordance with the internal laws of the State of New York applicable to agreements made and to be performed entirely in such state, without giving effect to the conflict or choice of law principles thereof. For all matters arising directly or indirectly from this Agreement (**"Agreement Matters"**), I hereby (i) irrevocably consent and submit to the sole exclusive jurisdiction of the United States District Court for the Southern District of New York and any state court in the State of New York that is located in New York County (and of the appropriate appellate courts from any of the foregoing) in connection with any legal action, lawsuit, arbitration, mediation, or other legal or quasi legal proceeding (**"Proceeding"**) directly or indirectly arising out of or relating to any Agreement Matter; provided that a party to this Agreement shall be entitled to enforce an

order or judgment of any such court in any United States or foreign court having jurisdiction over the other party, (ii) irrevocably waive, to the fullest extent permitted by law, any objection that I may now or later have to the laying of the venue of any such Proceeding in any such court or that any such Proceeding which is brought in any such court has been brought in an inconvenient forum, (iii) irrevocably waive, to the fullest extent permitted by law, any immunity from jurisdiction of any such court or from any legal process therein, (iv) irrevocably waive, to the fullest extent permitted by law, any right to a trial by jury in connection with a Proceeding, (v) covenant that I will not, directly or indirectly, commence any Proceeding other than in such courts, and (vi) agree that service of any summons, complaint, notice or other process relating to such Proceeding may be effected in the manner provided for the giving of notice as set forth in this agreement.

4. **Entire Agreement; Amendments and Waivers**. This Agreement (including Exhibits A and B attached hereto) represents the entire understanding and agreement among the parties hereto with respect to the subject matter hereof and can be amended, supplemented, or changed and any provision hereof can be waived, only by written instrument signed by the party against whom enforcement of any such amendment, supplement, change or waiver is sought.

5. **Captions**. The captions and section headings in this agreement are included solely for convenience of reference and are not intended to affect the interpretation of any provision of this agreement.

6. **Counterparts; Binding Effect**. This agreement may be executed in counterparts, each of which shall be deemed an original agreement, but all of which together shall constitute one and the same agreement. Except as otherwise expressly provided herein, this agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns, including, without limitation, a purchaser of all or substantially all of the assets of the Company or any of its affiliates.

7. **Notices**. All notices and other communications given or made pursuant to this agreement shall be in writing and shall be deemed effectively given: (a) upon personal delivery to the party to be notified, (b) when sent by confirmed electronic mail or facsimile if sent during normal business hours of the recipient, and if not so confirmed, then on the next business day, (c) five (5) days after having been sent by registered or certified mail, return receipt requested, postage prepaid, or (d) one (1) day after deposit with a nationally recognized overnight courier, specifying next day delivery, with written verification of receipt. All communications to

me shall be sent to the respective parties at their address as set forth on the signature page of this agreement, or in the Company's records, or to such e-mail address, facsimile number or address as subsequently modified by written notice given in accordance with this Section and all notices to the Company shall be provided to the Company's headquarters, attention CEO. If notice is given to the Company, a copy (which shall not itself constitute notice) must also be sent to Ed Zimmerman, Lowenstein Sandler LLP, 1251 Avenue of the Americas, 17th Floor, New York, NY 10020.

**By signing this agreement below, (1) I agree to be bound by each of its terms, (2) I acknowledge that I have read and understand this agreement and the important restrictions it imposes upon me, and (3) I represent and warrant to the Company that I have had ample and reasonable opportunity to consult with legal counsel of my own choosing to review this agreement and understand its terms including that it places significant restrictions on me.**

*[Signature page to follow]*

Employee

*[signature]*

Kenneth Carson

Dated: 09/01/2016

Accepted and Agreed to:

Flatiron Health

By *[signature]*

Name Nathaniel Turner
Title Co-Founder/CEO

## EXHIBIT A

### Obligations to Other Persons:

1) Confidentiality agreement with Seattle Genetics, Inc. surrounding plans for FDA approval of new indication for Adcetris, effective through June 2017
2) Confidentiality agreement with Celgene, Inc. surrounding marketing and promotion of Istodax, effective through January 2017.
3) Confidentiality agreement with Tor Hoerman Law, LLP, surrounding carcinogenic activity of two classes of antidiabetic drugs, disclosure limited by federal court order for indefinite period.
4) Confidentiality agreement with Husch-Blackwell, LLP and Monsanto, Inc. surrounding association to exposure to polychlorinated biphenyls and Non-Hodgkin lymphoma, the subject of ongoing litigation.
5) Chair of Data Safety and Monitoring Committee of National Cancer Institute funded study, "Phase II trial of nivolumab in treatment of HTLV-1 associated Adult T-cell Leukemia/Lymphoma."

## EXHIBIT B

California Labor Code Section 2870 Employment Agreements; Assignment of Rights

1. (a) Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:

     1. Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or

     2. Result from any work performed by the employee for the employer.

          a. To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable.

**List of Prior Excluded Inventions**

| Title | Date | Identification Number or Brief Description |
|---|---|---|

Ongoing investigations-
1)      Impact of body composition  on overall survival and disease-specific survival in patients with Non-Hodgkin Lymphoma.
2)      Impact of obese BMI after treatment of Non-Hodgkin lymphoma on the risk of co-morbid conditions and death.
3)      Impact of lipid control and blood glucose control medications on outcomes in patients with monoclonal gammopathy of undetermined significance (MGUS) and plasma cell myeloma
4)      Adherence to National Comprehensive Cancer Network guidelines in Non-Hodgkin lymphoma will improve overall survival.
5)      Evaluation of short- and long-term toxicities in patients with Chronic Lymphocytic Leukemia treated with hemotherapy and/or newer novel therapies.
6)      Evaluation of response and toxicity in elderly patients treated with PD-1 or PDL-1 inhibitors.

7)      Epigenetic profiling of tumor cells in mycosis fungoides and/or Sezary syndrome will predict response to systemic therapies.
8)      Racial disparities in cancer outcomes are related to differences in disease biology, as opposed to differences in treatment patterns.
9)      Clinical factors willl predict transition of MGUS to plasma cell myeloma.
10)     Impact of lipid control and blood glucose control medications in patients with pancreatic adenocarcinoma..
11)     Impact of lipid control and blood glucose control medications to patients with colon or rectal cancer will improve rates of pathologic remission.
12)     Evaluation of the "Khorana" prediction tool for venous thromboembolism in patients with plasma cell myeloma.
13)     Development and validation of a novel venous thromboembolism risk prediction tool in patients with plasma cell myeloma..
14)     Evaluation of the relationship between age and risk of bleomycin lung toxicity in patients with Hodgkin lymphoma..
15)     Evaluation of health Insurance status, stage of cancer diagnosis, frequency of screening, and uptake of cancer prevention strategies.

## EXHIBIT 2.3

### Form of Acknowledgment

My employment by Flatiron Health, Inc. (the "Company") is now terminated. I have reviewed my Employee Covenants Agreement with the Company, dated 9/1/2016 (the "Agreement"), and I swear, under oath, that:

- I have complied and will continue to comply with all of the provisions of the Agreement.

- I understand that all of the Company's materials (including without limitation, written or printed documents, email and computer disks or tapes, whether machine or user readable, computer memory, and other information reduced to any recorded format or medium), whether or not they contain Confidential Information (as that phrase is defined in the Agreement), are and remain the property of the Company. I have delivered to authorized Company personnel, or have destroyed, all of those documents and all other Company materials in my possession.

Sign ↓

_____
Signature

_____
Name (please print clearly)

_____
Address