USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/17/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
FLATIRON HEALTH, INC.,              :
                                    :
                Plaintiff,          :   19 Civ. 8999 (VM)
                                    :
     - against -                    :   **DECISION AND ORDER**
                                    :
KENNETH CARSON, M.D.,               :
                                    :
                Defendant.          :
------------------------------------X

**VICTOR MARRERO, United States District Judge.**

Plaintiff Flatiron Health, Inc. ("Flatiron") has sued its former employee, defendant Kenneth Carson, M.D. ("Carson") and his new employer, Tempus, Inc. ("Tempus"), to enforce a non-compete agreement.[1] (See Dkt. No. 1.) Flatiron is an oncology-focused healthcare technology and data services company founded in 2012 that specializes in gathering, processing, and analyzing clinical data and molecular data from the electronic health record. Tempus is a company founded in 2015 that also gathers and analyzes clinical and molecular data for use in cancer treatment. Flatiron views Tempus as one of its primary competitors. Carson is a hematologist and medical oncologist who served as Flatiron's Senior Medical Director from November 2, 2016 until his resignation effective September 26, 2019. Carson was a member of Flatiron's leadership team for the Research

---

[1] Flatiron has since dismissed its claims against Tempus. (Dkt. No. 32.)

1

Oncology function, with day-to-day responsibility overseeing research planning and execution. Carson's role gave him access to and intimate familiarity with Flatiron's methods for data extraction and analysis.

On October 2, 2019, Flatiron moved for a preliminary injunction against Carson. (See Dkt. No. 12.) On October 30, 2019, this Court granted that motion. ("Preliminary Injunction Order," Dkt. No. 46.) Subsequently, on November 6, 2019, Carson filed a notice of appeal from the Preliminary Injunction Order. (Dkt. No. 52.)

Now before the Court are the pre-motion letters from Carson requesting that the Court direct Flatiron to post an injunction bond in the amount of $500,000. (Dkt. Nos. 49 and 55.) Also before the Court are the pre-motion letters submitted by Flatiron requesting that the Court modify the Preliminary Injunction Order to clarify its terms. (Dkt. Nos. 64 and 69.) The Court construes Carson's letters (Dkt. Nos. 49 and 55) as a motion pursuant to Rule 65(c) of the Federal Rules of Civil Procedure ("Rule 65(c)") for an order directing Flatiron to post an injunction bond (the "Bond Motion"). The Court construes Flatiron's letters (Dkt. Nos. 64 and 69) as a motion pursuant to Rules 62(d) and 65(d) of the Federal Rules of Civil Procedure ("Rule 62(d)" and "Rule 65(d)," respectively) for modification of the Preliminary Injunction

Order (the "Modification Motion"). For the reasons set forth below, the Bond Motion is **GRANTED**, and the Modification Motion is **GRANTED**.

## I. BACKGROUND

Consistent with the Court's Individual Practices, on November 4, 2019, counsel for Carson submitted a letter requesting that the Court direct Flatiron to post an injunction bond in the amount of $500,000. ("Carson's November 4 Letter," Dkt. No. 49.) Carson writes that, in accordance with Rule 65(c), courts require plaintiffs who have obtained preliminary injunctions based on non-competes to post a bond. (Id. at 2.) Carson emphasizes that he "has been unable to perform work in his chosen field since September 26, 2019" and that, while the Preliminary Injunction Order permits Carson to work in a medical or oncological role, it "will take time before [he] could actually engage in such work." (Id. at 2-3.) Carson requests a bond of "at least $500,000," an amount that "includes Carson's anticipated annual compensation and related costs concerning his inability to perform work in his chosen field." (Id. at 3.) Two days later, Carson filed a notice of appeal from the Preliminary Injunction Order. (Dkt. No. 52.)

By letter dated November 8, 2019, Flatiron responded, identifying reasons why the Court should deny Carson's

3

request. ("Flatiron's November 7 Letter," Dkt. No. 57.) Flatiron argues that, under Rule 65(c), the Court has discretion to set the bond amount or dispense with the bond requirement. (Id. at 2-3.) Flatiron contends that a bond is not required because Carson has not shown that he will suffer harm absent a bond. (Id. at 3.) Flatiron notes that Carson did not seek a bond in his opposition to Flatiron's application for the preliminary injunction or at oral argument. (Id.) Flatiron also points out that Carson may still "see patients" and "pursue numerous other employment opportunities that are not in direct competition with Flatiron." (Id.) In addition, Flatiron argues that denying a bond is appropriate in light of this Court's prior determination that Flatiron had "made a clear showing" that it was likely to succeed on the merits. (Id. at 3 (quoting Preliminary Injunction Order at 2).) Finally, Flatiron argues that Carson has not met his burden of establishing a rational basis for the requested bond amount. (Id.) Flatiron maintains that the bond amount should reflect only the amount of damages that may be proximately caused by the wrongful issuance of an injunction between September 26, 2019 and trial -- an amount that, in Flatiron's view, is "significantly less than $500,000." (Id.)

Carson replied to Flatiron's arguments by letter dated November 12, 2019. ("Carson's November 12 Letter," Dkt. No. 55.) Carson argues that the cases Flatiron cites do not, contrary to Flatiron's characterization, support denying a bond merely because the party requesting the injunction made a "clear showing" that it is likely to succeed on the merits. (Id. at 2.) Rather, Carson contends, courts in those cases denied bonds where the party requesting the injunction demonstrated an overwhelming likelihood of success. (Id. at 2.) Carson denies that Flatiron has made such a showing. (Id.) Carson also maintains that a bond in the amount of $500,000 is appropriate. (Id. at 2-3.)

On December 9, 2019, Flatiron submitted a letter requesting modification of the Preliminary Injunction Order to clarify the scope of the injunction. ("Flatiron's December 9 Letter," Dkt. No. 64.) Flatiron explains that Carson is arguing on appeal that the Preliminary Injunction Order violates Rule 65(d) insofar as it does not explicitly state the acts restrained but identifies them by reference to Flatiron's proposed order to show cause (Dkt. No. 12). (Id. at 1.) Flatiron argues that, notwithstanding Carson's appeal of the Preliminary Injunction Order, the Court retains jurisdiction to modify the Preliminary Injunction Order to preserve the status quo. (Id. at 2 (citing Fed. R. Civ. P.

62(d).) Flatiron contends that modifying the Preliminary Injunction Order to explicitly state the terms previously incorporated by reference would preserve the status quo by clarifying what Carson is prohibited from doing, aid the Second Circuit in its consideration of the appeal, and promote judicial economy. (Id. at 2-3.) Alternatively, Flatiron requests that the Court issue an indicative ruling under Rule 62.1(a) of the Federal Rules of Civil Procedure ("Rule 62.1(a)"). (Id. at 3 n.3.)

By letter dated December 11, 2019, Carson identified reasons why he opposes Flatiron's request. ("Carson's December 11 Letter," Dkt. No. 63.) Carson agrees that Rule 62(d) permits a district court to modify an injunction where necessary to maintain the status quo during the pendency of the appeal. (Id. at 2.) However, he contends that a modification to preserve the status quo is not necessary in this instance and is therefore not authorized by Rule 62(d). (Id.) With regard to why a modification is not necessary, Carson explains that he has interpreted the order "in the broadest possible terms" and is not contemplating "working at Tempus or any similar company in any capacity." (Id. at 2-3.) He further contends that the proposed modification would not provide explicit notice of what acts are restrained. (Id. at 3.) Carson also disputes Flatiron's claim that modifying

the injunction would promote judicial efficiency and aid the Second Circuit in the consideration of the appeal. (Id. at 4.) He notes, in particular, that modifying the Preliminary Injunction Order would not resolve Carson's challenges on appeal to "numerous other aspects of the Order, including the sufficiency of the Order under Rules 52(a) and 65(d)(1)(A) [of the Federal Rules of Civil Procedure], and whether Flatiron carried its burden of clearly showing entitlement to a preliminary injunction." (Id. at 4.) Carson also asks the Court to deny Flatiron's alternative request for an indicative ruling under Rule 62.1(a) "for similar reasons." (Id. at 4 n.4.)

Flatiron replied to Carson's arguments in a letter dated December 13, 2019. ("Flatiron's December 13 Letter," Dkt. No. 69.) Flatiron contends that the arguments in Carson's appellate brief – namely, that the Preliminary Injunction Order provided "no description of the restraints placed on Dr. Carson, rendering it "vague" – contradict his representation to this Court that the Preliminary Injunction Order is sufficiently clear. (Id. at 1 (citing 2d Cir., No. 19-03688, ECF No. 43, at 54-55).) Flatiron argues that it is "self-contradictory and illogical" for Carson to argue, on the one hand, that the Preliminary Injunction Order is sufficiently clear and, on the other, that he will lack

7

adequate notice of what acts it prohibits if the Court modifies it to explicitly state the terms it incorporated by reference. (Id.) In addition, Flatiron points out that Carson has not identified a case in which a court refused to grant a motion to cure a Rule 65(d) objection pending appeal. (Id.) Finally, Flatiron maintains that modifying the Preliminary Injunction Order promotes judicial efficiency by avoiding a scenario in which the Second Circuit vacates the injunction based on Rule 65(d), requiring Flatiron to seek an injunction from this Court on an expedited basis prior to the commencement of trial on January 27, 2020. (Id.)

## II. DISCUSSION

### A. THE BOND MOTION

Rule 65(c) requires that a successful applicant for a preliminary injunction give security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The purpose of requiring bond is to "guarantee payment of costs and damages incurred by a party who is wrongfully enjoined or restrained." Johnson Controls, Inc. v. A.P.T. Critical Systems, Inc., 323 F. Supp. 2d 525, 541 (S.D.N.Y. 2004). The theory underlying Rule 65(c) is that the party seeking the injunction "consents to

liability up to the amount of the bond as the price for the injunction." Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 910 F.2d 1049, 1054 (2d Cir. 1990).

District courts in the Second Circuit have wide discretion to determine the amount of the bond or to set no bond. Johnson Controls, 323 F. Supp. 2d at 541 (compiling cases); Doctor's Assocs. Inc. v. Stuart, 85 F.3d 975, 985 (2d Cir. 1996). Courts often deny bond when the restrained party has not shown a likelihood of harm absent the posting of a bond. See, e.g., Doctor's Assocs., 85 F.3d at 985; Lighting & Supplies, Inc. v. Sunlite USA Corp., 2015 WL 3795858, at *1-2 (E.D.N.Y. 2015) (declining to require bond where injunction was based on the parties' concession that plaintiffs' rights were violated); New York City Triathlon, LLC v. NYC Triathlon Club, Inc., 704 F.Supp.2d 305, 345 (S.D.N.Y. 2010).

The amount of the bond is generally "the limit that a wrongfully restrained party may recover." Johnson Controls, 323 F. Supp. 2d at 541. Accordingly, in determining the bond amount, courts attempt to "limit the possibility that a restrained party that is ultimately successful on the merits is not able to obtain adequate relief." Id. When a defendant is enjoined from employment, the court may consider

information regarding lost profits in determining the amount of the bond. See id.

Here, Carson requests a bond of $500,000, an amount that "includes [his] anticipated annual compensation and related costs concerning his inability to perform work in his chosen field." (Carson's November 4 Letter at 3.) Flatiron notes that Carson did not request a bond when opposing Flatiron's application for a preliminary injunction. (Flatiron's November 8 Letter at 3.) However, the Second Circuit has suggested, without deciding, that district courts should not dispense with the bond requirement based on a party's failure to request a bond. See Eyewonder, Inc. v. Abraham, 293 F. App'x 818, 821 (2d Cir. 2008). Flatiron correctly points out that Carson can likely mitigate the loss of income from Tempus by pursuing other medical or oncological work while the Preliminary Injunction Order is in effect. (Flatiron's November 8 Letter at 3.) However, it may take time for Carson to secure such work (Carson's November 4 Letter at 3), and Carson may not be able to fully make up for the income he is not receiving from Tempus. Therefore, this is not a case in which the restrained party has failed to demonstrate that he will likely suffer any harm in the event that he was wrongly restrained. Cf. Doctor's Assocs., 85 F.3d at 985. At the same time, however, requiring a bond equivalent to Carson's entire

anticipated annual income from Tempus plus other unspecified "related costs" is unwarranted. Carson has not provided the Court with information indicating that a loss of that magnitude is more than speculative. See Inflight Newspapers, Inc. v. Magazines In-Flight, LLC, 990 F.Supp. 119, 140 (E.D.N.Y. 1997).

Based on these considerations, the Court finds that a $25,000 bond is fair and adequate to protect Carson's interests pending a trial on the merits.

B. THE MODIFICATION MOTION

1. Rule 65(d)'s Specificity Requirement

Rule 65(d)(1) requires that "[e]very order granting an injunction and every restraining order must: . . . (B) state its terms specifically; and (C) describe in reasonable detail – and not by referring to the complaint or other document – the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1) (emphasis added). The Second Circuit has explained that "Rule 65(d) is satisfied only if the enjoined party can ascertain from the four corners of the order precisely what acts are forbidden or required." City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 144 (2d Cir. 2011) (internal quotations and citations omitted). In Mickalis, the Second Circuit relied on Rule 65(d)(1)(C) to vacate an injunction that "prohibit[ed] certain conduct by reference to the

11

amended complaint." Id. at 146. In Eyewonder, the Second Circuit rejected the argument that incorporation of an external document was harmless because the referenced document was "clear" and "easily understood," explaining that the court is not "so flexible" about applying Rule 65(d)(1)(C). 293 F. App'x at 820.

Rather than explicitly detailing the prohibited acts, the Preliminary Injunction Order identifies them by reference to Flatiron's proposed order to show cause. (See Preliminary Injunction Order at 3 ("the motion of plaintiff Flatiron Health, Inc. for preliminary injunctive relief . . . (Dkt. No. 12) is GRANTED").) Accordingly, the Court is persuaded that the Preliminary Injunction Order lacks the specificity required by Rule 65(d)(1)(B)-(C).

2. Jurisdiction Pending Appeal

Flatiron argues that, consistent with Rule 62(d) (formerly, Rule 62(c)), this Court has jurisdiction to modify the Preliminary Injunction Order to explicitly state the terms that it incorporated by reference. Rule 62(d) provides that "[w]hile an appeal is pending from an interlocutory order . . . that grants . . . an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." Fed. R. Civ. P. 62(d). This rule "codifies the inherent power of

courts to make whatever order is deemed necessary to preserve the status quo and to ensure the effectiveness of the eventual judgment." 11 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2904 (3d ed. 2019); accord Sys. Fed'n No. 91, Ry. Emps.' Dep't, AFL-CIO v. Wright, 364 U.S. 642, 647 (U.S. 1961) ("The source of the power to modify is of course the fact that an injunction often requires continuing supervision by the issuing court and always a continuing willingness to apply its powers and processes on behalf of the party who obtained that equitable relief").

The Second Circuit recognizes that district courts may "modif[y] . . . injunction orders during the pendency of an appeal" but "only to preserve the status quo as of the time of the appeal." Ideal Toy Corp. v. Sayco Doll Corp., 302 F.2d 623, 625 (2d Cir. 1962). In Ideal Toy, the Second Circuit held that, once a preliminary injunction had been appealed, a district court could not vacate the preliminary injunction based on new evidence and argument. Id. Such an action would not "preserve the status quo as of the time of the appeal" but would "change the whole posture of the case on appeal." Id. In contrast, clarifying the terms of an injunction does not alter the posture of the case on appeal and is "necessarily included" within "[t]he district court's power to modify an injunction to preserve the status quo . . . ."

Broker Genius, Inc. v. Seal Scouts LLC, No. 17-cv-08627, 2019 WL 5203474, at *3 (S.D.N.Y. Sept. 23, 2019); Abdi v. Nielsen, 287 F. Supp. 3d 327, 333 (W.D.N.Y. 2018) (determining that the court retained jurisdiction to clarify a preliminary injunction pending appeal "pursuant to its intrinsic authority to supervise compliance with its original order, and to ensure the effectiveness of the eventual judgment."); Eli Lilly & Co. v. Arla Foods Inc., No. 17-C-703, 2017 WL 5244681, *1 (E.D. Wis. July 18, 2017) (modifying injunction to resolve a Rule 65(d)(1)(C) specificity issue pending appeal to "preserve the status quo"), aff'd, 893 F.3d 375, 384 (7th Cir. 2018); Velazquez v. Legal Services Corp., 336 F. Supp. 2d 267, 271-72 (E.D.N.Y. 2005) (clarifying preliminary injunction order despite pending appeal).

Carson contends that a modification is not actually needed to preserve the status quo, and is therefore improper, because he has interpreted the preliminary injunction "in the broadest possible terms" and is not contemplating "working at Tempus or any similar company in any capacity." (Carson's December 11 Letter at 2.) However, this argument contradicts Carson's characterization of the injunction as "vague." (2d Cir., No. 19-03688, ECF No. 43, at 54-55). It also assumes that Rule 65(d) is a technicality. But, as the Supreme Court has explained:

> [T]he specificity provisions of Rule 65(d) are no mere technical requirements. The Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood . . . . Since an injunctive order prohibits conduct under threat of judicial punishment, basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed.

Schmidt v. Lessard, 414 U.S. 473, 476 (1974) (citations omitted).

Based on the preceding discussion, the Court is persuaded that it retains jurisdiction to modify the Preliminary Injunction Order to provide the specificity required by Rule 65(d)(1)(B)-(C). Clarifying the Preliminary Injunction Order will preserve the status quo by eliminating uncertainty regarding the injunction's scope and avoiding the "possible founding of a contempt citation on a degree too vague to be understood." Id. It does not alter the posture of the case pending appeal, cf. Ideal Toy, 302 F.2d at 625, but aids appellate review by ensuring that the appellate court knows the "precise bounds" of this Court's order, Schmidt, 414 U.S. at 477 ("In the absence of specific injunctive relief, informed and intelligent appellate review is greatly complicated."). However, should the Court lack the authority to grant the Modification Motion, this Order shall also serve as an indicative ruling under Rule 62.1 that the Court would

grant the Modification Motion if the Second Circuit remands for that purpose.

Because this Order is itself an injunction that must conform with the requirements of Rule 65(d)(1)(A), the Court herein restates the reasons why it issued the Preliminary Injunction Order. As the Court stated in the Preliminary Injunction Order:

> [T]he Court finds that Flatiron has made a clear showing of the prerequisites for a preliminary injunction: irreparable harm, a likelihood of success on the merits, and the public interest. New York ex rel. Schneiderman v. Actavis PLC, 787 F.3d 638, 650 (2d Cir. 2015). In particular, the Court notes the extent of resources Flatiron has invested in developing and protecting the trade secrets at issue in this action, as well as the high degree of risk that -- notwithstanding the potential differences between Carson's former role at Flatiron and his prospective role at Tempus, and even absent any actual intent on his part to disclose confidential or other proprietary information of Flatiron's -- Carson may inevitably bring those trade secrets to bear in his work at Tempus. The Court also believes that any harm to Carson by affording injunctive relief may be mitigated by his ability to pursue other oncological and/or other medical work in the interim. In sum, the Court is persuaded that the facts of this case are substantially analogous to IBM v. Papermaster, No. 08 Civ. 9078, 2008 WL 4974508 (S.D.N.Y. Nov. 21, 2008).

(Preliminary Injunction Order at 2-3.)

## III. ORDER

Accordingly, it is hereby

**ORDERED** that the motion so deemed by the Court as filed by plaintiff Flatiron Health, Inc. ("Flatiron") for modification of the preliminary injunction order ("Preliminary Injunction Order," Dkt. No. 46) pursuant to Rules 62(d) and 65(d) of the Federal Rules of Civil Procedure is **GRANTED**; and it is further

**ORDERED** that during the pendency of this action Kenneth Carson, M.D. ("Carson") is preliminarily enjoined from directly or indirectly rendering services to Tempus or any entity or person whose primary business is providing software products, data analysis, data, clinical trial search services, analytics and electronic medical record systems to hospitals, physicians, community practices, health care centers, and pharmaceutical companies in the oncology industry; and it is further

**ORDERED** that during the pendency of this action Carson is enjoined from diverting or attempting to divert from Flatiron any business of any kind, including, without limitation, soliciting or interfering with any of Flatiron's customers, clients, members, business partners or suppliers; and it is further

17

**ORDERED** that during the pendency of this action Carson is enjoined from copying or reproducing for his or Tempus, Inc.'s use or giving, divulging, revealing, or otherwise disclosing to any person or business or professional entity, any trade secrets or confidential business information of Flatiron, or any client of Flatiron, and must return all copies of such trade secrets and confidential business information, provided, however, that this provision shall be subject to further specificity by the Court defining the terms "trade secrets" and "confidential business information," for which definition the parties are directed to submit to the Court, within five days of the date of this Order, a stipulation agreeing on the meaning of such terms, or each party's proposal for such definition and authoritative source therefor; and it is further

**ORDERED** that the Preliminary Injunction Order entered on October 30, 2019 is superseded by this Order; and it is further

**ORDERED** that the motion so deemed by the Court as filed by Carson pursuant to Rule 65(c) of the Federal Rules of Civil Procedure for an order directing Flatiron to post an injunction bond is **GRANTED** such that the issuance of this preliminary injunction is conditioned upon Flatiron posting

a bond in the amount of $25,000 by 5:00 p.m. on January 22, 2020.

**SO ORDERED.**

Dated:  New York, New York
        17 January 2020

_____
VICTOR MARRERO
U.S.D.J.