USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/27/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
FLATIRON HEALTH, INC.,

                Plaintiff,

   - against -

KENNETH CARSON, M.D.,

                Defendant.
------------------------------------X

19 Civ. 8999 (VM)

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

    Plaintiff Flatiron Health, Inc. ("Flatiron") has sued its former employee, defendant Kenneth Carson, M.D. ("Carson") and his new employer, Tempus, Inc. ("Tempus"), to enforce a non-compete agreement.[1] (See Dkt. No. 1.) Flatiron is an oncology-focused healthcare technology and data services company founded in 2012 that specializes in gathering, processing, and analyzing clinical data and molecular data from the electronic health record. Tempus is a company founded in 2015 that also gathers and analyzes clinical and molecular data for use in cancer treatment. Flatiron views Tempus as one of its primary competitors. Carson is a hematologist and medical oncologist who served as Flatiron's Senior Medical Director from November 2, 2016 until his resignation effective September 26, 2019. Carson was a member of Flatiron's leadership team for the Research

---

[1] Flatiron has since dismissed its claims against Tempus. (Dkt. No. 32.)

1

Oncology function, with day-to-day responsibility overseeing research planning and execution. Carson's role gave him access to and intimate familiarity with Flatiron's methods for data extraction and analysis.

On October 2, 2019, Flatiron moved for a preliminary injunction against Carson. (See Dkt. No. 12.) On October 30, 2019, this Court granted that motion. ("Preliminary Injunction Order," Dkt. No. 46.) On November 4, 2019, Carson requested that the Court order Flatiron to post an injunction bond. ("Bond Motion," Dkt. No. 49.) Subsequently, on November 6, 2019, Carson filed a notice of appeal from the Preliminary Injunction Order. (Dkt. No. 52.) On December 9, 2019, Flatiron requested that the Court modify the Preliminary Injunction Order to clarify its terms. ("Modification Motion," Dkt. No. 64.)

On January 17, 2020, the Court granted the Bond Motion and the Modification Motion. ("January 17 Order," Dkt. No. 72.) To ensure that the terms of the preliminary injunction provide sufficiently specific descriptions of the restrained conduct, the Court ordered the parties to submit definitions of the terms "trade secrets" and "confidential business information." (See id. at 18.)

Now before the Court are the letters from Flatiron and Carson regarding their proposed definitions for the terms.

2

("Flatiron's January 22 Letter," Dkt. No. 77, and "Carson's January 22 Letter," Dkt. No. 78.) For the reasons set forth below, the Court accepts Flatiron's proposed definitions.

## I. BACKGROUND

In the January 17 Order, the Court enjoined Carson "from copying or reproducing for his or Tempus, Inc.'s use or giving, divulging, revealing, or otherwise disclosing to any person or business or professional entity, any trade secrets or confidential business information of Flatiron, or any client of Flatiron," and ordered him to "return all copies of such trade secrets and confidential business information." (January 17 Order at 18.) However, the Court also ordered that "this provision shall be subject to further specificity by the Court defining the terms 'trade secrets' and 'confidential business information[.]'" (Id.) The Court ordered the parties to submit "a stipulation agreeing on the meaning of such terms, or each party's proposal for such definition and authoritative source therefor[.]" (Id.)

The parties were not able to reach an agreement on the definitions. (See Flatiron's January 22 Letter at 1; Carson's January 22 Letter at 2.) Accordingly, the parties submitted separate proposals. (See Flatiron's January 22 Letter; Carson's January 22 Letter.)

3

Flatiron proposes that the Court adopt the definition of trade secrets from the federal Defend Trade Secrets Act, 18 U.S.C. Section 1836, et. seq. (See Flatiron's January 22 Letter at 1.) The Act defines trade secrets as:

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if –– (A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]

(Id. (quoting 18 U.S.C. § 1839(3)).) With regard to confidential business information, Flatiron proposes that the Court incorporate the definition of confidential information provided by the Employee Covenants Agreement between Carson and Flatiron. (See id.) The Employee Covenants Agreement defines confidential information as:

> all of the trade secrets, know-how, ideas, business plans, pricing information, the identity of and any information concerning customers or suppliers, computer programs (whether in source code or object code), procedures, processes, strategies, methods, systems, designs, discoveries, inventions, production methods and sources, marketing and sales information, information received from others that [Flatiron] is obligated to treat as confidential or

4

> proprietary, [or] any other technical, operating, financial [or] other business information that has commercial value, relating to [Flatiron], its business, potential business, operations or finances, or the business of [Flatiron's] affiliates or customers . . . .

(Id. (quoting "Employee Covenants Agreement," Dkt. 1-1 § 2).)[2]

In contrast, Carson proposes to define "Trade Secrets and Confidential Business Information" as:

> any non-public scientific or technical know-how, ideas, computer programs (whether in source or object code), processes, methods, systems, designs, discoveries, or inventions, as well as information received from customers or suppliers for which there is a contractual obligation to keep such information confidential, that (A) the owner thereof has taken reasonable measures to keep such information secret, and (B) the information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

(Carson's January 22 Letter at 2.) Carson argues that this definition is consistent with decisions by courts within the Second Circuit, including decisions in which courts have held that knowledge of business operations, strategic business and marketing plans, and price lists are not necessarily entitled to protection as trade secrets. (Id. at 2.)

---

[2] The noted alterations reflect those made to the language of the Employee Covenants' Agreement in Flatiron's January 22 Letter.

## II. **DISCUSSION**

While there is overlap between the parties' proposed definitions, Carson's proposed definition is substantially narrower. In contrast to Flatiron's proposed definitions, it does not provide for the protection of financial, business, economic, engineering, pricing, or marketing information.

In determining how to define the terms at issue, the Court is mindful of the limitations on its jurisdiction while Carson's appeal of the Preliminary Injunction Order remains pending. Consistent with Federal Rule of Civil Procedure 62(d) ("Rule 62(d)"), the Second Circuit recognizes that district courts may "modif[y] . . . injunction orders during the pendency of an appeal," but "only to preserve the status quo as of the time of the appeal." Ideal Toy Corp. v. Sayco Doll Corp., 302 F.2d 623, 625 (2d Cir. 1962); accord 11 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2904 (3d ed. 2019) (Rule 62(d) "codifies the inherent power of courts to make whatever order is deemed necessary to preserve the status quo and to ensure the effectiveness of the eventual judgment").

In general, the Court's power to preserve the status quo includes the power to clarify the terms of an injunction. See, e.g., Broker Genius, Inc. v. Seal Scouts LLC, No. 17-cv-08627, 2019 WL 5203474, at *3 (S.D.N.Y. Sept. 23, 2019);

Abdi v. Nielsen, 287 F. Supp. 3d 327, 333 (W.D.N.Y. 2018). At the same time, however, the Court may not alter the posture of the case on appeal. See Ideal Toy, 302 F.2d at 625. Accordingly, when clarifying injunctions while an appeal is pending, district courts must ensure that any clarifications are "consistent with the spirit" of the original injunction such that they do not materially alter the status of the case on appeal. United States v. Spectrum Brands, Inc., No. 15-cv-371, 2018 WL 502736, at *1, *3 (W.D. Wis. Jan 19, 2018); see Abdi, 287 F. Supp. 3d at 333 (determining that the court could clarify a preliminary injunction pending appeal where a "decision on the clarification motion would not 'adjudicate substantial rights directly involved in the appeal'" (quoting Newton v. Consol. Gas Co. of N.Y., 258 U.S. 165, 177 (1922))).

In moving for a preliminary injunction, Flatiron sought protection of information fairly categorized as financial, business, economic, engineering, pricing, or marketing in nature. (See Dkt. No. 14, at 1, 3-4, 6-8, 13-14.) Indeed, Flatiron explicitly argued that business and marketing information is protectable. (See id. at 6.) Thus, Carson had the opportunity to argue that such categories of information were not protectable in his opposition to Flatiron's motion for a preliminary injunction.

When the Court granted Flatiron's motion, the Court did not limit its findings, holdings, or the terms of its order to certain categories of information. (See Preliminary Injunction Order.) Accordingly, to define the terms "trade secrets" and "confidential business information" in a manner that excludes financial, business, economic, engineering, pricing, or marketing information would be contrary to the spirit of the Preliminary Injunction Order and would alter the status quo. Indeed, the argument Carson makes in support of his proposed definition -- that business, marketing, and pricing information are not protectable as trade secrets -- relates to the parties' substantive rights, which are at issue on appeal.

For preceding reasons, the Court accepts the definitions Flatiron proposes. Flatiron's definitions are consistent with the spirit of the Preliminary Injunction Order and make explicit what was already implicitly so.

Insofar as this Order is itself an injunction that must conform with the requirements of Federal Rule of Civil Procedure 65(d)(1)(A), the Court herein restates the reasons why it issued the Preliminary Injunction Order. As the Court stated in the Preliminary Injunction Order:

> [T]he Court finds that Flatiron has made a clear showing of the prerequisites for a preliminary injunction: irreparable harm, a likelihood of

success on the merits, and the public interest. <u>New York ex rel. Schneiderman v. Actavis PLC</u>, 787 F.3d 638, 650 (2d Cir. 2015). In particular, the Court notes the extent of resources Flatiron has invested in developing and protecting the trade secrets at issue in this action, as well as the high degree of risk that -- notwithstanding the potential differences between Carson's former role at Flatiron and his prospective role at Tempus, and even absent any actual intent on his part to disclose confidential or other proprietary information of Flatiron's -- Carson may inevitably bring those trade secrets to bear in his work at Tempus. The Court also believes that any harm to Carson by affording injunctive relief may be mitigated by his ability to pursue other oncological and/or other medical work in the interim. In sum, the Court is persuaded that the facts of this case are substantially analogous to <u>IBM v. Papermaster</u>, No. 08 Civ. 9078, 2008 WL 4974508 (S.D.N.Y. Nov. 21, 2008).

(Preliminary Injunction Order at 2-3.)

### III. ORDER

Accordingly, it is hereby

**ORDERED** that the January 17, 2020 order modifying the preliminary injunction ("Modification Order," Dkt. No. 72) is superseded by the terms of this Order; and it is further

**ORDERED** that the term "trade secrets" as used in this Order shall refer to all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored,

9

compiled, or memorialized physically, electronically, graphically, photographically, or in writing if -- (A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information; and it is further

**ORDERED** that the term "confidential business information" as used in this Order shall refer to all of the trade secrets, know-how, ideas, business plans, pricing information, the identity of and any information concerning customers or suppliers, computer programs (whether in source code or object code), procedures, processes, strategies, methods, systems, designs, discoveries, inventions, production methods and sources, marketing and sales information, information received from others that Flatiron Health, Inc. ("Flatiron") is obligated to treat as confidential or proprietary, or any other technical, operating, financial or other business information that has commercial value, relating to Flatiron, its business, potential business, operations or finances, or the business of Flatiron's affiliates or customers; and it is further

**ORDERED** that during the pendency of this action Kenneth Carson, M.D. ("Carson") is preliminarily enjoined from directly or indirectly rendering services to Tempus Inc. ("Tempus") or any entity or person whose primary business is providing software products, data analysis, data, clinical trial search services, analytics and electronic medical record systems to hospitals, physicians, community practices, health care centers, and pharmaceutical companies in the oncology industry; and it is further

**ORDERED** that during the pendency of this action Carson is enjoined from diverting or attempting to divert from Flatiron any business of any kind, including, without limitation, soliciting or interfering with any of Flatiron's customers, clients, members, business partners or suppliers; and it is further

**ORDERED** that during the pendency of this action Carson is enjoined from copying or reproducing for his or Tempus' use or giving, divulging, revealing, or otherwise disclosing to any person or business or professional entity, any trade secrets or confidential business information of Flatiron, or any client of Flatiron, and must return all copies of such trade secrets and confidential business information; and it is further

**ORDERED** that the issuance of this preliminary injunction is conditioned upon the bond Flatiron posted in the amount of $25,000 on January 21, 2020 (see Dkt. No. 74) in accordance with the terms of the Modification Order.

**SO ORDERED.**

Dated:  New York, New York
        27 January 2020

_[signature]_
VICTOR MARRERO
U.S.D.J.